[File No. 6046.]

EMIL H. INTLEHOUSE, as Receiver of the First National Bank of Minnewaukan, North Dakota, Petitioner, v. L. R. BAIRD, as Receiver of the Minnewaukan State Bank, Minnewaukan, North Dakota, Respondent.

(— A.L.R. —, 242 N. W. 427.)

Opinion filed April 23, 1932.

*Houska & Slevens,* for petitioner.
*Zuger & Tillotson,* for respondent.

CHRISTIANSON, Ch. J. This controversy involves a claim of the petitioner Intlehouse as receiver of the First National Bank of Minnewaukan, North Dakota, against the Minnewaukan State Bank of Minnewaukan, which latter bank is also in receivership. The claim involves a deposit in the Minnewaukan State Bank and it is contended by petitioner that the claim is entitled to a preference over other claims. The claim was allowed by respondent, receiver of the Minnewaukan State Bank as an ordinary claim, and preference denied. The matter was duly submitted to the district court and the district court ruled that the petitioner was not entitled to a preference and the petitioner has sought a review of this ruling under the provisions of §§ 5 and 18, chapter 99, Laws 1927.

The material and undisputed facts are as follows: The petitioner is the receiver of the First National Bank of Minnewaukan. The Minnewaukan State Bank was a banking corporation organized under the laws of this state. It became insolvent and was closed by order of the state examiner on October 24, 1930, and the respondent, L. R. Baird, was thereafter duly appointed receiver and still is such receiver. At the time of the closing of said bank the petitioner had on deposit therein as receiver of the First National Bank of Minnewaukan the sum of $773.81 "which said deposit belonged to and was part of the funds of said insolvent banking association, the First National Bank of Minnewaukan, said deposit being made by petitioner in his name as said receiver;" that on or about December 16, 1930, the "petitioner caused to be filed with the respondent a claim for a preference for said sum of $773.81;" that said "claim was so filed in due and regular form and within the time" provided by law.

Petitioner's contention that he is entitled to a preference is predicated upon § 16, chapter 200, Laws 1923, which reads as follows:

"Whenever any bank doing business in this state under the provisions of this Act shall suspend payment or become insolvent, the amount of money standing to the credit of the Depositors' Guaranty Fund on deposit in such bank shall be a first lien upon the assets of such institution; save and except funds deposited in such institution and belonging to the estate of any insolvent bank, deposited therein by the Receiver or other person officially in charge, which shall have preference over all other claims."

This statutory provision is a part of the law providing for the establishment and operation of a depositor's guaranty fund for the purpose of insuring depositors in the several state banks. This law was first enacted in 1917. Laws 1917, chap. 126. As originally enacted the above quoted statutory provision read as follows:

"Whenever any bank doing business in this State under the provisions of this Act shall suspend payment or become insolvent, the amount of money standing to the credit of the Depositors' Guaranty Fund on deposit in such bank shall be a first lien upon the assets of such institution; save and except funds deposited in such institution by the State Examiner and belonging to the estate of any insolvent institution, which shall have preference over all other claims." (See Laws 1917, chap. 126, § 14.)

At the time of the enactment of the depositors' guaranty fund law in 1917, the then existing laws made provision for appointment by the state examiner of a receiver for any insolvent banking corporation. Laws 1915, chap. 53. Such receiver was required to "pay over all moneys received by him and make report of his doings to the examiner." The procedure prescribed was quite similar to that provided by the laws of the United States for the liquidation of national banking corporations, under the direction of the Comptroller of the Currency. It is obvious therefore that when the legislative assembly in 1917, in the act creating the Depositors' Guaranty Fund, provided that funds deposited in a bank "by the bank examiner and belonging to the estate of any insolvent (banking) institution, shall have preference over all other claims," it must have had in mind moneys belonging to "the estate of" some insolvent state bank, which moneys had been turned over to the examiner by the receiver that had been appointed by him for such insolvent state bank.

Interim 1919 and 1923 a considerable number of state banks were closed and the legislative assembly which convened in January, 1923, deemed it necessary to enact legislation providing an entirely new procedure for the administration of insolvent banks in liquidation. See chapter 137, Laws 1923. The act contained a preamble wherein it was recited that "there are a large number of insolvent banks in the state," and declared that "the ordinary judicial and administrative machinery of the state is insufficient and illy adapted to the successful and ex-

peditious administration of the affairs of such insolvent banks, and their assets are being absorbed and depleted by expenses of administration, without corresponding liquidation of their obligations. . . ." The act (§ 2) provided that immediately upon taking effect thereof the state examiner should certify to the attorney general of the state a list of state banks then "closed as insolvent, whether in the hands of receivers, the state examiner's office, or other trustees or agents of the state." It was made the duty of the attorney general to institute an action and ask for the appointment of a receiver (§ 3), and it was further provided that on the filing of such complaint by the attorney general the court should "appoint a receiver, or two joint receivers, of all said insolvent banks;" also that "the receiver so appointed by the court shall supersede and supplant any receiver theretofore appointed by the banking department, or any examiner or officer of the banking department that may be in charge of such banks" (§ 8). It was further provided that the act should apply to any banking associations that might thereafter become insolvent and be closed; that the names of any such association should be certified to the attorney general by the state examiner, that thereupon the attorney general should file a complaint, and that "the court shall thereupon in like manner appoint the same receiver, or receivers, for such additional association or associations, and the original proceeding provided for herein, and all subsequent proceedings that may be taken as in this section provided shall be deemed to be merged and amalgamated into one proceeding but the affairs of each association shall be kept separate." § 9. The same legislative assembly enacted other legislation relating to banking. It found it necessary or desirable to amend and re-enact the Depositors' Guaranty Fund Law, some of the provisions of which would be affected by the other legislation enacted. The above quoted provision of the Guaranty Fund Law relating to deposit of money belonging to the estate of an insolvent bank by the state examiner would have become practically meaningless and inoperative as a result of the new procedure for the administration and liquidation of closed banks; for under the new procedure the state examiner did not appoint a receiver of an insolvent bank and the funds arising in the course of liquidation would be in the hands of the receiver appointed by the court and not in the hands of the examiner. However, the examiner, or his deputy, or

representatives of the Guaranty Fund Commission might be temporarily in charge of an insolvent bank until a receiver was appointed by the court. And it will be noted that the legislative assembly had this situation in mind as it provided in the amendment adopted in 1923 that the preference provided should cover funds on deposit belonging to the estate of any insolvent bank, "deposited therein by the receiver or other person officially in charge." Under the laws existing in 1917 the state examiner would have had charge of the moneys arising in the course of liquidation of state banks turned over to him by the receiver which he had appointed. Under the new procedure, prescribed by the legislative assembly in 1923, such moneys would go into the hands of the receiver. Hence, the logical thing for the legislative assembly to do (if it desired to retain the right of preference prescribed by the law of 1917) was to change the provisions of the section quoted so as to substitute "receiver or other person officially in charge" for the "the state examiner." In short, if the legislature desired to make the original rule as to preference applicable under the new procedure prescribed for the administration and liquidation of insolvent banking institutions such change was necessary.

Obviously the law relating to guarantee of bank deposits applied only to state banking institutions. The provision in the original enactment, that is, the law of 1917, giving preference to funds deposited by the state examiner, in the very nature of things could only refer to funds belonging to the estate of an insolvent banking institution organized under the laws of the state and could have no reference to the funds of an insolvent national banking corporation. As said, the change in the phraseology of this section by the legislature in 1923, was essential to meet the new conditions, as under the laws enacted by the same legislative assembly the state examiner would no longer deposit such funds but they would be deposited by the receiver or receivers of state banks. There is nothing to indicate that the legislature intended to enlarge the scope of the enactment or that it had in mind any purpose other than to retain the preference granted to deposits belonging to insolvent state banks under the enactment of 1917. Both the original statute and the amended statute speak of the "estate of any insolvent bank;" yet, as said, the enactment of 1917 could in no possible manner

be construed so as to apply to funds of other than those of an insolvent state bank.

We are all agreed that the legislature did not intend to include in the enactment of 1923 any banks other than those included in the enactment of 1917, but that the purpose of the amendment in 1923 was merely to retain the object sought by the original enactment. In short, we are of the opinion that the preference granted to deposits belonging to an insolvent bank has reference only to state banks organized under the laws of this state, that is, to funds deposited by "the receiver or other person officially in charge" of an insolvent banking corporation organized under the laws of this state, and that such preference does not apply to moneys deposited by the receiver of a national bank.

It follows therefore, that the decision of the trial court is correct. It must be, and it is, affirmed.

Nuessle, Burr, Birdzell and Burke, JJ., concur.